Joseph B. PREVETTE, Plaintiff,

v.

Elliot L. RICHARDSON, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 70–287.

United States District Court,
D. South Carolina,
Rock Hill Division.

Sept. 3, 1970.

Charles H. Chiles, Spencer & Spencer, Rock Hill, S. C., for plaintiff.

Oscar Bannister, Jr., Asst. U. S. Atty., Greenville, S. C., for defendant.

## ORDER

HEMPHILL, District Judge.

Plaintiff brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C.A. Section 405(g)), to obtain judicial review of a "final decision" of the Secretary of Health, Education, and Welfare, denying his claim for social security disability benefits.

The "final decision" of the Secretary, rendered by a hearing examiner on November 18, 1969, held that plaintiff was not entitled to a period of disability (previously established beginning January 16, 1966) and to disability insurance benefits (beginning August 1966) because it was subsequently determined that plaintiff did not, in fact, meet the definition of "disability". It further held that the disability insurance benefits totaling $4,488.60 paid the plaintiff for the period of August 1966 through February 1969, constituted an overpayment; and that he was not without fault in causing and accepting said overpayment totaling $4,488.60.

The issue in this case is whether or not there is substantial evidence in the record to support the "final decision" of the Secretary that plaintiff was not entitled to a period of disability under Section 216(i) of the Social Security Act (42 U.S.C.A. Section 416(i)), and to monthly disability insurance benefits under Section 223 of the Act (42 U.S.C.A. Section 423), and if so whether the recovery of the overpayment of disability insurance benefits may not be waived pursuant to Section 204 of the Social Security Act (42 U.S.C.A. Section 404).

The plaintiff was born June 18, 1907 and completed the eighth grade in the public schools. The plaintiff began working in textile mills at the age of 17, but after five years left the mills to hold a series of jobs unrelated to the textile industry. He serviced a laundry route for fourteen years, operated a package store for five years, sold furniture for eight years, and finally was an automobile salesman for the eleven years preceding the onset of the claimed disability. His employment as an automobile salesman was terminated May 6, 1966.

The medical evidence of record reflects that the plaintiff was hospitalized in York General Hospital from January 28 until February 11, 1964 at which time a diagnosis of arteriosclerotic heart disease with angina pectoris was given by the attending physician. In January 1966 the plaintiff spent two weeks in the York hospital at which time a hemorrhoidectomy was performed and the diagnosis of the attending physician was internal and external hemorrhoids, chronic peptic ulcer, hypertensive cardiovascular disease. From March 29 until April 6, the plaintiff was again confined to the York hospital for treatment of his heart condition, the diagnosis being arteriosclerotic heart disease with

angina. From the 9th until the 26th of May 1966, the plaintiff, having suffered a coronary thrombosis, was for a third time in five months confined to the hospital.

On August 9, 1966, the plaintiff filed for disability benefits and the Examiner found his condition as follows:

Arteriosclerotic heart with angina pectoris; consider impending coronary thrombosis; pulmonary emphysema and peptic ulcer symptoms by history. EKG confirmed myocardial infarction. His family physician gives a diagnosis of arteriosclerotic heart disease; previous coronary thrombosis, pulmonary emphysema and old peptic ulcer disease * * *. He has shortness of breath on slight activity and chest pains on slight activity.

The date of the commencement of the disability was determined by the Examiner as January 16, 1966, the date of the plaintiff's first admittance to York hospital in 1966 and his work activity from that date classified as an unsuccessful attempt to return to work.

In March 1969 the plaintiff was notified by the Department of Health, Education, and Welfare that he had returned to work and his Social Security benefit was not paid for that month nor has it been subsequently paid. In June of 1969 the plaintiff was formally notified that his claim for disability had been reviewed and denied and that the Social Security Administration demanded repayment of all amounts previously paid.

■ The initial burden of proving disability was upon the plaintiff. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). The plaintiff met that burden in August 1966 showing the assortment of ailments set forth above. In the absence of proof to the contrary there is a presumption that the condition of the plaintiff remains unchanged. Hall v. Celebrezze, 314 F.2d 686 (6 Cir. 1963). The only medical evidence subsequent to the initial determination of disability which was a part of the record below consisted of reports of two local physicians who it appears had treated the plaintiff for a long period. Neither report indicated any recovery by the plaintiff and one suggested that his condition had in fact deteriorated.

The plaintiff, in spite of his weakened condition, continues to direct limited activity toward the conduct of an advertising business which he began in his spare time while an automobile salesman. It was as a result of this activity that the original determination of disability was reversed.

■ While it is true that work performed during a period of disability may demonstrate ability to engage in substantial gainful activity,[1] it is also true that a plaintiff need not be totally helpless to be considered disabled within the meaning of the Social Security Act. Foster v. Ribicoff, 206 F.Supp. 99 (W.D.S.C.1964).

The record shows that some time before the beginning of the year 1966, the plaintiff began an advertising business to which he devoted time not taken in his regular employment. The nature of the business appears to have been the soliciting of orders for specialty items for use by his customers in promoting their respective interests. At some time subsequent to May 1966 the advertising business began to operate again. In 1966 the business had gross sales of $11,206.00 and profit of $1,139. In 1967 sales were $23,553 and the profit was $291, and in 1968 the sales were $38,861.00 and the profit $2,393.00. The business license was in the name of the plaintiff's wife. The plaintiff testified that the business belonged to her, that she devoted her full time to the conduct of it. He further stated that he worked in the business as much as he was able because in the words of the plaintiff and his daughter, "[y]ou can't sit there with your hands between your legs." According to his account and that of his daugh-

---

1. See, Simmons v. Celebrezze, 362 F.2d 753 (1966); 20 C.F.R. § 404.1532.

ter who testified at the hearing, the plaintiff goes to the post office, types invoices and checks, answers the telephone, gives advice and counsel to his wife and calls on some customers. His activities in the business which is located in his home take an hour in the morning and two hours in the afternoon and he performs them only when he feels like doing something. He appears a man without education interests or hobbies, a man whose life has been devoted to his work.

■■ From a review of the entire record it is clear that the activities outlined above do not meet the test of substantial gainful activity so as to defeat his claim for benefits. There is no justification for a belief that the plaintiff is a malingerer but rather that he wanted to work, indeed had to work, if able to do so. The activity relied upon by the government in denying a claim for disability benefits must be both substantial and gainful. (Hibler v. Ribicoff, 196 F.Supp. 460 (D.Mont.1961). The term "substantial gainful activity means the performance of substantial services with reasonable regularity in some competitive employment or self-employment." (Foster v. Ribicoff, 206 F.Supp. 99 (W.D.S.C.1962)). The hours that the plaintiff devoted to his wife's marginally profitable business demonstrate activity which is neither substantial nor gainful within the meaning of the Act. In designating it so, the Examiner labored under a misunderstanding of the law which is shown by his statement in the record that, "They can only get disability benefits under social security when you're incapable of working any more." The Examiner was greatly impressed by the report of some customers that they dealt with the plaintiff rather than with his wife. This, however, is not inconsistent with the testimony of the plaintiff that he worked when he could because it provided an outlet for his energies and was indeed essential therapy. There is no reason to believe that the plaintiff is physically able to work for more than two or three hours daily on an irregular basis. Such activi-

ty is not substantial or gainful within the meaning of the Act.

It follows that the only reasonable conclusion that can be sustained is that the plaintiff has demonstrated a requisite physical disability. The decision of the Secretary was not based on substantial evidence and it must therefore be reversed.

The Clerk will enter judgment for the plaintiff.

And it is so ordered.